[No. 26095-2-I. Division One. January 27, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. JOSEPH KELLEY, *Appellant.*

*Joshua Weinstein* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Robin Fox, Deputy,* for respondent.

KENNEDY, J. — Appellant Joseph Kelley appeals from the judgment and sentence following his conviction of burglary in the second degree. Kelley asserts that the trial court erred by failing to dismiss the charge following a violation of his CrR 3.3 speedy trial rights. We affirm.

I

On October 13, 1989, Kelley was charged with one count of burglary in the second degree in violation of RCW 9A.52-.030. David Hirsch represented Kelley and James Cline represented the State. Trial was set for December 12, 1989, with a speedy trial expiration date of December 23, 1989.[1]

On Tuesday, December 26, 1989, the matter appeared on the trial calendar before Presiding Judge Johnson of the King County Superior Court. The case had been reassigned, on Friday, December 22, to deputy prosecutor Denis O'Leary, because Mr. Cline left on that day for a previously arranged vacation. Mr. O'Leary requested a 5-day extension, as, on the following day, December 27, he was scheduled to resume a homicide trial that had begun the week before. Kelley objected on the basis that the matter was not reassigned to a deputy prosecutor who was immediately available for trial. The court reserved ruling on this objection and granted a 5-day extension, to January 3, 1990, "because of unavoidable or unforeseen circumstances beyond the control of the court or the parties", as Mr. O'Leary was in trial on another matter and therefore unavailable.

The matter again appeared on the trial calendar on January 2, 1990. The State requested that the matter be brought back on the following day, as Mr. O'Leary was still in the

---

[1]December 23 fell on a Saturday and December 25 was a legal holiday; thus, the actual expiration date was December 26, 1989.

homicide trial. Kelley moved to dismiss for speedy trial violations. The court held the case over to January 3, 1990.

On January 3, 1990, Mr. O'Leary was still in the homicide trial and the State requested another 5-day extension. Kelley objected, arguing that "[t]his is a self-created scheduling conflict on the part of the Prosecutor and therefore is not grounds for an extension." The court signed another 5-day extension, to January 9, 1990, and told defense counsel to schedule a hearing if he wanted to be heard further on the matter of speedy trial.

On January 9, 1990, the trial began before Judge Schapira. Mr. Cline, who by then had returned from vacation, represented the State. Kelley moved to dismiss for violation of speedy trial. The trial judge provisionally denied the motion and ordered the trial to proceed, but granted Kelley's request to take the matter back before Presiding Judge Johnson at a later date. At the close of trial, the jury found Kelley guilty as charged.

Judge Johnson heard Kelley's motion to dismiss on March 27, 1990. The court considered an affidavit by Mr. Cline, the testimony of Deanna Jennings Fuller, assistant chief criminal deputy prosecutor, and arguments and briefs of the parties. In his affidavit, Mr. Cline stated that the case had been assigned to him after he had planned a vacation through the Christmas holidays, but that given the December 12, 1989, trial date, he did not expect his vacation to conflict with the trial.

Ms. Fuller, who is responsible for assigning felony trials, testified that she reassigned the case to Mr. O'Leary because:

he was the only deputy of the 14 — approximately 14 people available, potentially available. O'Leary was the only one who was not going on vacation and who did not have other cases, other than the single remaining murder case that he had to dispose of. Everyone else had multiple cases stacked up in Presiding.

In holding that Kelley's CrR 3.3 speedy trial rights were not violated, Judge Johnson reasoned:

The law is not perfectly bright lettered on all of the possibilities out of which claims of unavoidable or unforeseen adjustments to trial scheduling extensions are warranted under the Court Rules. The Rules tell us, and the cases do, that the Speedy Trial Rules of 60 - 90 day rules, are not [of] Constitutional proportions in their demands on us, but are serious business. And that we must meet them, except for unavoidable and unforeseen circumstances.

All cases are subject in some respect to a certain amount of after game quarterbacking also in terms of seeing what happened and what should have been the design.

It is true, and to the extent relevant, I so find that December was a very difficult time for trial management. Not just because of the usual holiday scheduling, but because of a continuation of severe problems posed by the King County Council and the King County Executive in the management of jail personnel and the way the Department of Adult Detention was staffed for serving the courts.

In my personal calculations, we were losing up to two judges per day for weeks and weeks, since I took this calendar on in July of 1989. And the accumulation of that takes its own toll on trial scheduling and the ability to predict when one case or another is to go out. It all adds to the challenge of trying to assign fault and responsibility in connection with the management of a case on any particular day.

For whatever it's worth, and I'm sure not much at this stage, I for[e]went 2½ weeks of vacation. I fortunately was not going anywhere and had not expended some money to buy tickets and make family plans. I think Mr. [C]line's Affidavit and his statement that he had eight days of vacation in two years — it's easy to say, "Don't take another vacation." It reaches a point, and it's pure speculation, but one might assume that there reaches a point where the failure to take a period of time for vacation may cause a lot more time loss in illness and otherwise for persons who are called upon to work in this setting.

The parties have confirmed that there were times in this interim, and on this *Kell[e]y* case, when Mr. [C]line was ready to be assigned and Mr. Hirsch was not. And apparently perhaps vice-versa.

Ms. Fuller and the Court were meeting over the telephone and personally with some frequency through the fall and winter in attempting to balance the schedules and resources. And the Court was, for want of a better word, being warned of the impending congestion to arise in the early part of 1990.

I'm satisfied that Ms. Fuller's determination that Mr. O'Leary was the most available Prosecutor is a good faith assessment, and one to be accepted.

Part of the difficulty of planning, and what the Court would take judicial notice of, over 80%, I think, of cases filed — unless someone wants to volunteer [a] some[what] different figure — are resolved by pleas of guilty. Close to 87% of cases are resolved by other than trials in this County. To assign Mr. O'Leary to trial with another case a day or two away, whether it's a murder case or any other kind of case, does not provide a perfect crystal ball as to whether that case is going to be tried on schedule, or at all.

. . . .

No prejudice to Mr. Kell[e]y is shown other than the added time in jail, which I don't want to minimize. But in terms of the presentation of the case by the delay in question, no other prejudice is shown.

Under the circumstances, the Court's extension of the case for the five day period in question [was] done for reasons, I think. And [circumstances] were unavoidable and unfor[e]seen when viewed at the time in which the actions were taken, and in light of reasonableness under all of the circumstances that then existed.

I conclude that the case should therefore not be dismissed. I add that it's possible to view this entire issue with a different set of glasses. And the record is now made and how the Court of Appeals addresses it, we'll wait upon. I don't think there are any other factual matters that need findings.

The case was transferred back to Judge Schapira, who sentenced Kelley within the standard range.

Kelley timely appeals to this court, assigning error only to the 5-day extension which was granted on December 26, 1989.

## II

■ CrR 3.3(d)(8)[2] allows the trial court to extend the time within which a trial must be held for periods of up to 5 days.

---

[2]CrR 3.3(d)(8) provides:

"**(d) Extensions of Time for Trial.** The following extensions of time limits apply notwithstanding the provisions of section (c):

". . . .

"(8) *Five-Day Extensions.* When a trial is not begun on the date set because of unavoidable or unforeseen circumstances beyond the control of the court or the parties, the court, even if the time for trial has expired, may extend the time within which trial must be held for no more than 5 days exclusive of Saturdays, Sundays, or holidays unless the defendant will be substantially prejudiced in his or her defense. The court must state on the record or in writing the reasons for the extension. If the nature of the unforeseen or unavoidable circumstances

An extension pursuant to CrR 3.3(d)(8) may be granted only if there are "unavoidable or unforeseen circumstances beyond control of the court or the parties . . . unless the defendant will be substantially prejudiced in his or her defense." A trial court's decision to grant an extension under CrR 3.3(d)(8) will be reviewed for a manifest abuse of discretion. *State v. Greene*, 49 Wn. App. 49, 55, 742 P.2d 152 (1987); *State v. Raper*, 47 Wn. App. 530, 537, 736 P.2d 680, *review denied*, 108 Wn.2d 1023 (1987); *State v. Brown*, 40 Wn. App. 91, 94, 697 P.2d 583, *review denied*, 103 Wn.2d 1041 (1985). A trial court abuses its discretion if its decision is based upon untenable grounds or upon untenable reasons. *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 77, 684 P.2d 692 (1984); *Lindgren v. Lindgren*, 58 Wn. App. 588, 595, 794 P.2d 526 (1990), *review denied*, 116 Wn.2d 1009, 805 P.2d 813 (1991).

Kelley first asserts that the trial court erred in granting a 5-day extension on December 26, 1989, because the finding that Mr. O'Leary was unavailable, as he was in trial on another matter, is not supported by the record. Kelley argues that both counsel were available on December 26, and thus, the trial court abused its discretion in granting a 5-day extension.

Although Mr. O'Leary was available on December 26, the record reflects that the following day he was scheduled to resume a homicide trial that had begun the week before. In *State v. Palmer*, 38 Wn. App. 160, 162-63, 684 P.2d 787 (1984), this court held that the trial court properly exercised its discretion in granting a 5-day extension under CrR 3.3(d)(8) where the deputy prosecutor was in trial on another matter and where the defendant failed to show prejudice. This court reasoned:

> The trial deputy's scheduling difficulties were the result of delay in assignment out of the presiding department and the

---

continues, the court may extend the time for trial in increments of not to exceed 5 days exclusive of Saturdays, Sundays, or holidays unless the defendant will be substantially prejudiced in his or her defense. The court must state on the record or in writing the reasons for the extension."

particular complications of her negligent homicide trial. These problems were specific, unpredictable, and certainly not self-created. Accordingly, the delay was the result of unforeseen and unavoidable circumstances beyond the control of the court or parties, and, as such, was a proper reason to grant an extension pursuant to CrR 3.3(d)(8).

*Palmer*, 38 Wn. App. at 162-63; *see also Raper*, 47 Wn. App. at 539; *Brown*, 40 Wn. App. at 94-95.

■ Here, Mr. O'Leary was already in trial on another matter and the trial in the instant case was likely to extend beyond the one day that he was available.[3] Although the presiding judge might have commenced Kelley's trial on December 26, to have done so would have required the trial to be interrupted for an unknown period of time, pending the completion of the homicide trial. Although bifurcated trials are sometimes necessary, they are not favored. Kelley does not claim that he was prejudiced by the extension. We hold that the trial court did not abuse its discretion by declining to commence Kelley's trial on December 26, as Mr. O'Leary was not available to complete Kelley's trial in an orderly fashion, had it been commenced on the single day Mr. O'Leary had available.

Kelley next asserts that the trial court erred in granting the 5-day extension on December 26, 1989, because the unavailability of the State's counsel was neither unavoidable nor unforeseen. Kelley argues that the lack of availability of the State's counsel was entirely within the State's control. Kelley contends that extending the expiration date because the case had been reassigned from a vacationing deputy to a deputy already in trial was not justified. By waiting until December 22, a Friday and the last court date before the December 26 expiration date, to reassign his case, and, in reassigning his case to a deputy already involved in a lengthy homicide trial, Kelley maintains that the prosecutor's office acted unreasonably.

Because Kelley alleges no prejudice from the extension, the sole question is whether an unavoidable or unforeseen

---

[3]The record reflects that Kelley's trial, once it was commenced, lasted 6 days.

circumstance beyond the court's or the parties' control justified the extension. *See* CrR 3.3(d)(8). The court found that "Ms. Fuller's determination that Mr. O'Leary was the most available Prosecutor is a good faith assessment, and one to be accepted." The court also found that the 5-day extension was granted on the basis of circumstances that, at the time, were unavoidable and unforeseen.

██ The record supports the trial court's explicit finding that the prosecutor's office exercised good faith in assigning the case to the next most available deputy, Mr. O'Leary. Implicit in this finding is a finding that it was not unreasonable to wait until December 22 to determine whether Mr. O'Leary was the most available deputy. The record also supports this implicit finding.

As noted by Judge Johnson in his oral ruling, defendants may enter guilty pleas at many stages of a criminal proceeding, including during trial. Mr. Cline himself may have become available, before he left for vacation, to try the Kelley case;[4] Mr. Hirsch's availability was also subject to question. Another of the 14 deputies potentially available may have become available to try the Kelley case. The court reasoned that

> [t]o assign Mr. O'Leary to trial with another case a day or two away, whether it's a murder case or any other kind of case, does not provide a perfect crystal ball as to whether that case is going to be tried on schedule, or at all.

Thus, the court made the tenable determination to accept Ms. Fuller's decision to wait until December 22 to reassign the case and her determination that Mr. O'Leary was the most available deputy prosecutor on December 22.

While Kelley carefully refrains from arguing on appeal that Mr. Cline's vacation was not an unforeseen or unavoidable circumstance, that argument was made below. The State candidly admitted at oral argument on appeal that the planned vacation gave rise to the need for reassign-

---

[4]At oral argument for this appeal, the State represented that the policy at the King County Prosecutor's office is that if a deputy is in trial when his vacation is due to start, the deputy will not go on the vacation.

ment. The record reflects that the vacation was planned well in advance and that the Kelley trial was scheduled for December 12, a full 2 weeks in advance of the expiration date. The matter did not go to trial between December 12 and December 26, 1989, because, at various times, both Mr. Cline and Mr. Hirsch were in trial, and one day when Mr. Cline was available, Mr. Hirsch was ill and unavailable. That the trial was not had before Mr. Cline's vacation and the December 26 expiration date was both unforeseen and unavoidable.

We feel it is necessary, in order to properly rule upon this case, to address the underlying implicit issue of whether, under these circumstances, the State had an obligation to require Mr. Cline to forgo his vacation to assure Kelley of his CrR 3.3 speedy trial rights.[5] RAP 12.1(b). We deem it unnecessary to require written argument on the issue as it was raised and argued below, and as the issue was also addressed by the trial court.

■ A trial court may be affirmed on any basis supported by the record and the law. *LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027, *cert. denied*, 493 U.S. 814 (1989); *Hadley v. Cowan*, 60 Wn. App. 433, 444, 804 P.2d 1271 (1991). We agree with the reasoning of Judge Johnson that to require deputy prosecutors to forgo vacation "[will reach] a point where the failure to take a vacation may cause a lot more time loss in illness and otherwise for persons who are called upon to work in this setting." We fully appreciate the "setting" to which Judge Johnson referred. As noted by Ms. Fuller in her testimony, of the 14 deputy prosecutors potentially available to try Kelley's case, all were in trial and all but one had multiple cases stacked up in the presiding department, waiting to go out just as soon as a deputy became available. Deputy prosecutors, particularly those in our heavily populated counties, are required to try cases back to back, day after day, and month after month, and year

---

[5]The record reflects that Mr. Cline had only 8 days of vacation in the past 2 years.

after year. It is not humanly possible to work under this kind of pressure and stress, for months and years at a time, without any extended vacation. That deputy prosecuting attorneys will require vacations is not an unforeseen circumstance, but one which is in fact and in law unavoidable.

There is a need for appellate guidance on the issue of whether a deputy prosecutor's vacation can, in and of itself, justify a 5-day extension. We point first to the purpose and construction of the criminal rules which must be construed "to secure simplicity in procedure, fairness in administration, effective justice, and the elimination of unjustified expense and delay." CrR 1.2.

At the hearing on the motion to dismiss for violation of Kelley's right to speedy trial, Ms. Fuller testified as to the process she uses to cope with the difficult task of scheduling and rescheduling witnesses, deputy prosecutors and defense lawyers and as to the multiple cases stacked up in the presiding department in December of 1989 for every potentially available deputy but Mr. O'Leary:

Q: [By Mr. Cline] In connection with my trial assignments, were you familiar with what my schedule was to be in the latter part of December?

A: Yes.

Q: What was that?

A: Well, everyone was very heavily set through the month of December. But you had requested a vacation some period of time in advance. I can't recall when, but it was certainly a timely request. Your vacation was scheduled from December 26 through January 5. And we knew that it would be something that we had to work toward in disposing of your cases prior to your leaving.

The last case I assigned to you in the month of December was the *Kell[e]y* case, which is the subject of today's hearing. And at that time it had an expiration date of December 22. So my hope was that there was plenty of time to get it completed before your vacation began.

. . . .

Q: Do you know how I progressed during that period of time in getting out to trial?

A: Well, everybody including you, had backed up pretty badly to the point where I noticed just this morning in looking at the Presiding calendar again, two cases which continued to not get out were actually set for you in mid-November.

That was the *Kinch* (sp.) Assault case with Anne Englehart and the *Jones* Theft and PSP case with Mr. Hirsch. Both those were supposed to have been disposed of in November and were still hanging [in mid-December when] . . . you were trying to get *Kell[e]y* out to trial . . ..

Q: Are you familiar with the general condition of the court calendar during this period of December, the last two weeks before Christmas?

A: Yes.

Q: What was the general condition?

A: The general condition was that it was as busy as we have seen it in preceding and subsequent months. There were multiple defense attorneys and Prosecutors trying to meet their personal vacation schedules. There were witness vacation schedules to work around. And it was an extremely busy and heavy trial calendar, I would say.

. . . .

Q: When you assigned the case to me of Mr. Kell[e]y's case, what was the expiration date that you knew about at that time?

A: December 22.

Q: Which is a Friday?

A: I don't recall.

Q: At that time, that was the last day I was suppose[d] to work prior to vacation, is that correct?

A: Yes.

Q: At the time you assigned the case to me, what was your anticipation as to whether or not I would be able to complete the case prior to leaving for vacation?

A: Well, I knew that we had to wait and determine what would happen with the case in terms of Mr. Hirsch as well as various other cases and court's availabilities. And so we purposely did not reassign it to somebody else earlier because we felt it would just be a gamble. That if I assigned it to somebody else earlier it wouldn't assure us any progress in getting the case out. And it would mean that somebody else would have to prepare it, only to not go out either. So we waited quite late in the day to determine who could be available to try it for reassignment.

. . . .

Q: When you reassigned the case to Mr. O'Leary, did you do so with the intent that when I returned, he would still be in trial and [you] would simply pass the case back to me?

A: No.

Q: That wasn't your expectation at all?

A: No because you were going to be gone for two weeks. And I certainly didn't expect that his case would take that long.

Fairness in administration and effective justice requires that responsibly scheduled vacations of deputy prosecutors be honored by the State. To construe CrR 3.3 otherwise would be to deprive deputy prosecutors of the dignity they deserve, and would result eventually in less effective justice as well as in unfairness in the administration of justice.

This is not to say that the State has no responsibility to reassign a vacationing deputy's cases to the next most available deputy, and to control the schedule of vacations in such a manner as to minimize the need to reassign cases. Such clearly is required and such clearly was done here.

We emphasize that the State has an obligation to accommodate both responsibly scheduled vacations for its deputy prosecutors and a defendant's CrR 3.3 rights. We hold that when the State has responsibly managed its resources in terms of the available deputy prosecutors, courtrooms and judges, and also in terms of the responsible scheduling of prosecutor vacations, but due to unforeseen or unavoidable circumstances beyond the control of the parties or the court, a criminal case cannot be tried on its set date or before the CrR 3.3 expiration date, the State may accommodate the planned vacation of the deputy prosecutor assigned to the case, so long as the case is reassigned in good faith to the next most available deputy prosecutor. If that next most available prosecutor is already in trial, as will not be an unusual circumstance, particularly in our more heavily populated counties, we hold that the court may properly grant a 5-day extension. Under these circumstances, we also hold that the deputy prosecutor's responsibly planned vacation is an unavoidable circumstance within the meaning of CrR 3.3 and not a self-created scheduling conflict as was argued by Kelley below.

Here, we also find it relevant that the record reflects that on December 22, when Mr. Cline left on vacation and the case was assigned to Mr. O'Leary, no one expected Kelley's trial to be delayed until January 9, 1990, on which day Mr. Cline by happenstance was scheduled to return and did in

fact return. Kelley does not assign error to any other extensions than the extension granted on December 26, 1989. Kelley also claims no prejudice, and the court found no prejudice.

We hold that the trial court did not abuse its discretion in refusing to dismiss the charge. Kelley's CrR 3.3 speedy trial rights were not violated by the 5-day extension granted on December 26, 1989.

SCHOLFIELD and BAKER, JJ., concur.