# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73402-4-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| DENISE RENEE RUD, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: July 25, 2016 |
| | ) | |

Cox, J. — Denise Rud appeals her convictions of eight counts of identity theft. She claims that the trial court abused its discretion by admitting evidence of stolen property for which she was not charged and that the evidence unfairly prejudiced the outcome of the trial. Because the evidence is part of the res gestae of the charged crimes, it was within the trial court's discretion to admit the evidence. We affirm.

The State charged Denise Rud with one count of possession of a stolen vehicle and 11 counts of identity theft. The charges arose from two incidents when police stopped Rud in two different vehicles. On both occasions, police uncovered stolen property. Each count of identity theft was based on property belonging to a separate victim.

The testimony at trial established that the first stop occurred on July 18, 2013. Shortly after midnight, a police officer stopped Rud, who was driving a Ford Taurus, for traffic violations. Rud had a suspended license and no vehicle

registration documents. The Taurus's temporary license tag appeared to have been altered. Rud told the officer that she borrowed the vehicle from a friend named Greg Solvang. The officer learned from the dispatch operator that the vehicle had been reported as stolen.

The police impounded the car and obtained a search warrant. Upon searching various bags and backpacks in the Taurus, the police found property belonging to Rud and to her boyfriend, Trevor Bresnahan. The police also found property associated with the following seven individuals: Michael Collins, Michael Fretz, Dale Forrest, Lorraine Curtis, and Evelyn, Barry, and Kelsey Martin. Four of the identity theft charges related to victims whose personal or financial information was found in the Taurus: Count 2 (Forrest), Count 3 (Fretz), Count 4 (Curtis), and Count 5 (Evelyn Martin).

A week later, on July 25, police observed a Chevy Cavalier travelling at a high rate of speed. The driver, later identified as Bresnahan, led the police on a high-speed chase for several miles as the police signaled for him to pull over. Rud was in the backseat. When he finally stopped, Bresnahan said he had used methamphetamine, had been car prowling, and that Rud had "nothing to do with it." The police found a Home Depot card in Bresnahan's pocket in the name of Kim Tran.

Police later obtained a search warrant for numerous bags, purses, backpacks, and boxes that were in the Cavalier. In addition to items associated with Rud and Bresnahan, the police found property belonging to the following victims associated with eight identity theft charges: Evelyn Martin (Count 5),

Mary Highfill (Count 6), Laura Honhart (Count 7), Jennifer Karman (Count 8), Fenglin Zhu (Count 9), Nancy Addelson (Count 10), Nagaswapna Bhamidipati (Count 11), and Nancy Larrimore (Count 12).[1] Police also found identification and/or financial information in the Cavalier pertaining to several other individuals and one business: Kim Tran, Olivia Bates, Han Kim, Tracy McCullen, Earnest Knotts, and Pickle Time Deli. There were no charges associated with this property.

The police later arrested Rud. When interviewed by a police officer upon her arrest, Rud explained that Bresnahan told her he had borrowed the Taurus because his Cavalier was not working. Rud acknowledged that she suspected the Taurus was stolen. When shown the identification cards of Lorraine Curtis, Rud said she found them in Bresnahan's belongings, and took them because she planned to return them by mail to Curtis. She also identified Bresnahan as the source of property belonging to Evelyn and Barry Martin. Rud also said that all of the identification cards and credit cards later found in the Taurus had been in her room at her mother's house, and when her mother kicked the couple out of the house, she gathered up all these items and put them in bags. Rud denied using any of the items because she was "too chicken" to do so, but said she "would give them to other people to use."

At trial, Rud testified and denied making the statements reported by the police officer. She admitted that she lied about borrowing the Taurus from Solvang in order to protect Bresnahan. Rud testified that the only bag in the Taurus that was hers was a plaid bag which did not contain any stolen items.

---

[1] Property belonging to Evelyn Martin was found in both vehicles.

Regarding the night she was stopped in the Cavelier, Rud said that after visiting a casino, Bresnahan agreed to drive her to the hospital because she was having chest pains. She testified that she fell asleep, and only awoke when they were being chased by police. Rud claimed she was unaware of the car prowling. She denied knowingly possessing any stolen items with intent to use them to steal or defraud.

Bresnahan also testified that Rud fell asleep in the Cavalier and that while she slept, he broke into approximately 20 cars looking for gambling money. Bresnahan said that he placed some credit cards that he stole in Rud's purse to avoid "trouble" if he were pulled over.[2] The jury convicted Rud of eight counts of identity theft and acquitted on the remaining charges.

## EVIDENCE OF UNCHARGED CRIMES

Rud contends that the trial court abused its discretion in admitting evidence of stolen property that was not the basis for any of the identity theft charges. Rud contends that this evidence was both unfairly prejudicial and inadmissible under ER 404(b).

Before Rud's trial, the prosecution moved in limine to present all evidence of personal and financial information belonging to other individuals that was found during the two vehicle searches. The State argued that the evidence related to uncharged crimes was admissible res gestae evidence, necessary to complete the picture of the crime. The State argued that the evidence was also admissible under ER 404(b) to show absence of mistake, intent, and knowledge.

---

[2] Report of Proceedings (March 3, 2015) at 735. However, all stolen items that were found in Rud's red Dior handbag were stolen prior to July 25.

4

Over the defense's objection, the court granted the State's motion. Rud did not request, and the trial court did not provide, a limiting instruction.

Under ER 404(b), evidence of prior misconduct is not admissible "to show that it is likely the defendant committed the alleged crime, acted in conformity with the prior bad acts when committing the crime, or had a propensity to commit the crime."[3] Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[4]

In addition to these enumerated ER 404(b) exceptions, Washington has recognized a "res gestae or same transaction exception."[5] The res gestae or "same transaction" exception to ER 404(b) allows the admission of evidence of other crimes or bad acts to "complete the story of a crime or to provide the immediate context for events close in both time and place to the charged crime."[6] Before a trial court may admit evidence of other crimes or misconduct under an exception to ER 404(b), it must: (1) find by a preponderance of the evidence that the misconduct occurred; (2) determine whether the evidence is relevant to a material issue; (3) state on the record the purpose for which the evidence is being introduced; and (4) balance the probative value of the evidence against the danger of unfair prejudice.[7]

---

[3] State v. Wilson, 144 Wn. App. 166, 175, 181 P.3d 887 (2008).
[4] ER 404(b).
[5] State v. Lane, 125 Wn.2d 825, 831, 889 P.2d 929 (1995).
[6] State v. Lillard, 122 Wn. App. 422, 432, 93 P.3d 969 (2004).
[7] State v. Trickler, 106 Wn. App. 727, 732, 25 P.3d 445 (2001) (citing State v. Brown, 132 Wn.2d 529, 571, 940 P.2d 546 (1997)).

We review a trial court's decision on the admissibility of evidence for abuse of discretion.[8] A trial court abuses its discretion only when its decision is manifestly unreasonable or based on untenable grounds.[9] When admitting evidence of misconduct, a trial court should provide a limiting instruction if requested, but trial courts are not required to give such an instruction sua sponte.[10]

The trial court did not explicitly identify res gestae as the basis for admitting the evidence. But the State presented this basis as well as others for admission. We conclude it is appropriate to affirm on this ground.[11] Accordingly, we need not address the other bases asserted by the State.

The evidence was a part of the immediate circumstances of the charged crimes. The stolen property related to uncharged crimes in both vehicles was comingled with stolen property related to charged crimes. The entire context of Rud's possession of stolen property was important in order for the jury to evaluate the police officer's testimony that Rud admitted knowing that Bresnahan had stolen the property, but said she might only pass on property to others but would not use the items to commit any crimes herself. The full picture of the circumstances surrounding the crimes also allowed the jury to assess Rud's contradictory trial testimony in which she denied knowing about any stolen

---

[8] State v. Finch, 137 Wn.2d 792, 810, 975 P.2d 967 (1999).
[9] State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).
[10] State v. Russell, 171 Wn.2d 118, 122-23, 249 P.3d 604 (2011).
[11] See State v. Kelley, 64 Wn. App. 755, 764, 828 P.2d 1106 (1992) (this court may affirm an evidentiary ruling on any basis that is supported by the record and the law).

property or about Bresnahan's car prowling activity until he "mentioned" it when she awoke during the high speed chase in the Cavalier.

Rud points out that the State did not establish that all of the thefts were a part of the same criminal transaction. But this is irrelevant because Rud was not charged with theft. The evidence at trial established that the identification and financial information in the vehicles was stolen at different times. Rud's possession of stolen financial and personal information-relating to both charged and uncharged victims-was part of the same series of events.

Rud contends that State v. Trickler compels a different result. We disagree. There, a landlord evicted a tenant. When the tenant was in the process of moving out of the property, the landlord called the police to report that some of his personal property was in the tenant's car.[12] The tenant consented to a search of his car, and when some property belonging to the landlord and the landlord's son was found, he maintained that it must have been loaded by mistake.[13] The police also found a stolen credit card belonging to someone other than the landlord during the search, and the State charged the defendant with possession of this stolen credit card.[14] At trial, in addition to the stolen credit card, the court allowed the admission as res gestae of evidence of 16 stolen items not related to any charge.[15] The appellate court concluded that the trial court failed to balance the probative value against the prejudicial impact, and

[12] Trickler, 106 Wn. App. at 729.
[13] Id. at 730.
[14] Id.
[15] Id. at 733-34.

7

proceeded to conduct its own balancing.[16] Observing that the State had not shown that the defendant's possession of the other stolen items was an inseparable part of the charged offense, the court held that the trial court abused its discretion.[17] Rud contends that as in Trickler, allowing the trial court to admit a "plethora" of evidence of stolen property found in the vehicles that related to uncharged crimes merely "left the jury to conclude that Rud is a thief."[18]

But here, the court balanced the probative and prejudicial value of the evidence before admitting it. The stolen property evidence related to charged crimes was not outweighed by evidence related to uncharged crimes. It does not appear that the stolen credit card in Trickler was intermingled with the stolen property related to uncharged crimes, as was the case here. Unlike in Trickler, the evidence of additional stolen property largely implicated Bresnahan as a thief, not Rud. The trial court did not abuse its discretion in admitting evidence of Rud's possession of stolen property for which she was not charged because the evidence was part of the res gestae of the charged offenses.

Even if the evidence related to additional victims was wrongly admitted, we would conclude any error was harmless. Error "is not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred."[19] In this case, the jury's verdict shows that it was not overly influenced by the admission of evidence of stolen property for which Rud was not charged. Seven of the eight counts upon which

---

[16] Id. at 733.
[17] Id. at 734.
[18] Id.
[19] State v. Tharp, 96 Wn.2d 591, 599, 637 P.2d 961 (1981); see State v. Howard, 127 Wn. App. 862, 871, 113 P.3d 511 (2005).

8

the jury convicted Rud involved stolen property that was found in a red Dior handbag in the Cavalier. This bag also contained personal and financial property belonging to Rud, and Bresnahan testified that the bag was Rud's. The only other count upon which the jury convicted Rud involved stolen property of Lorraine Curtis, which Rud admitted to possessing. Under these circumstances, Rud fails to establish that any error resulted in prejudice.

We affirm the judgment and sentence.

Cox, J.

WE CONCUR: