IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 40309-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| WALTER SCOTT AMSDEN, | ) | |
| | ) | |
| Appellant. | ) | |

MURPHY, J. — Walter Amsden was convicted of felony violation of a domestic violence no-contact order. At trial, Amsden stipulated to two prior convictions for violation of a protection order, and did not contest his violation of the order that resulted in the current charged offense. Amsden instead relied on a defense of necessity.

On appeal, Amsden claims: (1) he was denied due process when the trial court refused to bifurcate a jury instruction on whether the State had proved two prior protection order violations, (2) he was prejudiced when the trial court refused to redact the term "domestic violence" from the State's no-contact order exhibit and otherwise prohibit its use of the term during trial, and (3) insufficient evidence was presented to prove his criminal history for purposes of calculating the offender score.

We disagree with the first two assignments of error but, as the State concedes, remand is necessary for resentencing to address the offender score issue.

We affirm Amsden's conviction but reverse his sentence and remand for resentencing.

## FACTS

Amsden was charged with violation of a domestic violence no-contact order after he was found sleeping in the protected party's vehicle, which was within the restricted area identified in the no-contact order. The State alleged Amsden had two prior convictions for violating a protection order and charged Amsden with a felony.

Prior to trial, the parties entered into an *Old Chief* [1] stipulation relative to Amsden's prior convictions.

Also prior to trial, Amsden moved to bifurcate the evidence and jury instructions pertaining to his prior convictions utilizing the procedure as provided in *State v. Oster*, 147 Wn.2d 141, 52 P.3d 23 (2002). The trial court denied Mr. Amsden's bifurcation motion:

> THE COURT: Actually, the to convict instruction includes that he has to have two priors to meet the felony, and that *Oster* case said it was fine. The Judge decided to do it, but that it is part of the elements. So that[] the Court does not have to bifurcate it. The *Old Chief* stipulation takes away some of that prejudice, but there are many kinds of charges such as failing to register as a sex offender, felony possession of a firearm that include elements.

---

[1] *Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997).

So the Supreme Court has held that you don't have to separate it. In fact, the jury should hear the actual elements of the crime. So I'm going to deny it for bifurcation at this point.

Rep. of Proc. (RP) (Mar. 11, 2024) at 10-11.

Prior to the commencement of trial, the State announced its intent to introduce into evidence, as an exhibit, the domestic violence no-contact order Amsden was charged with violating. Amsden proposed the same no-contact order as an exhibit but with all references to domestic violence redacted, including the entirety of paragraph 6 of the order, which read: "Based upon the record, both written and oral, the Court finds that the defendant has been charged with, arrested for, or convicted of an offense of domestic violence under Chapter 10.99 RCW. Ex. P-1 at 2 (boldface omitted). Amsden also moved in limine to exclude during trial "any reference to any acts of domestic violence" between Amsden and the protected party, redact "any reference to 'domestic violence' from all exhibits", and "[p]rohibit the use of the term 'domestic violence' during trial." CP at 27-28.

The State opposed Amsden's motions in limine, and expressed concern that the redaction of the entirety of paragraph 6 of the no-contact order exhibit or prohibiting reference to domestic violence during trial could confuse the jury. The State also expressed that, while it did not plan to bring up the history of domestic violence or

3

have an expert testify about domestic violence or details of Amsden's relationship with

the protected party other than they are intimate partners, it did have some questions for

the venire about whether any of its members had a history with domestic violence.

With regard to the motions to exclude, redact, and prohibit any reference to

domestic violence, the court observed:

> THE COURT: . . . This [is] a DV [domestic violence] charge. I'm
> planning on asking the jury as far as domestic violence because there's a lot
> of jurors usually that have experience with domestic violence that might not
> be appropriate for this kind of a trial.
> So I was planning on doing that because a no contact order, this isn't
> just your simple no contact order. It is a domestic violence no contact order.
> So the jury they're going to find out that they were intimate partners or
> dated. That's going to be part of it.
> So what's the purpose of not including domestic violence?

RP (Mar. 11, 2024) at 18. In response, Amsden argued that "just the term domestic

violence is highly prejudicial because it impassions people." RP (Mar. 11, 2024) at 18.

The court ultimately ruled:

> THE COURT: Well, one, the charge is domestic violence for a
> violation of a no contact order. The Court usually as part of that when I
> talk about a violation of a no contact order, talk about domestic violence,
> I try to explain that domestic violence means that there's a relationship
> between the alleged victim and the defendant whether it be intimate
> partners, household members, depending on that. That's more of a tag
> based on the relationship between the parties. Then I do ask the jurors if
> they have had any experience with protection orders, domestic violence and
> then go through them one by one, and you do get some very strong feelings.

So we just did a domestic violence trial, and I think we struck three [prospective jurors] for cause that one lady's currently in the domestic violence court. So I really think it's something that the Court needs to flush out to get a fair trial.

[DEFENSE COUNSEL]: Understood.

THE COURT: So at this point, the Court's going to deny the motion to redact anything involving the term domestic violence. If you have a better way you want me to explain it, but I will explain it's a tag just to show the relationship between the alleged victim and the defendant. As I said, I just ask about that and if anybody's been involved with that.

RP (Mar. 11, 2024) at 19-20.

During jury selection, the court explained to prospective jurors that the alleged crime was a violation of a no-contact order, which was "categorized as a domestic violence, and . . . domestic violence just means that the parties, the alleged victim, the defendant, there's a relationship between them either as intimate partners, brother/sister, mother/father, those kind of [relationships]. So that's what the domestic tag is." RP (Mar. 11, 2024) at 49. Multiple prospective jurors expressed experience or knowledge of domestic violence as a result of questioning from the trial court, the prosecutor, and defense counsel. Several jurors expressed doubts that they could remain impartial and were excused for cause.

At the close of the State's case-in-chief, the *Old Chief* stipulation was read to the jury by the trial court:

       The parties have agreed that certain facts are true. You must accept as true the following facts: That the person before the Court who has been identified in the charging document as the defendant, Walter Amsden, date of birth 4/27 of '75, prior to November 18th, 2023, has at least two prior convictions for violating the provisions of a court order in Superior Court under case numbers 23-1-01835-32 and 16-1-02417-4. The stipulation is to be considered evidence only of the prior convictions.

RP (Mar. 11, 2024) at 141; *see also* Clerk's Papers (CP) at 65.

Amsden testified that he was sleeping in the van because all of his possessions were in the van, he had nowhere else to sleep, and he was afraid of freezing to death.

Several of the court's jury instructions are relevant to issues on appeal. First, the jury was instructed on what the State's burden was in order to prove Amsden was guilty of felony violation of a no-contact order:

       To convict the defendant of the crime of felony violation of a court order, each of the following five elements of the crime must be proved beyond a reasonable doubt:
  (1)  That on or about November 18, 2023, there existed a no-contact order applicable to the defendant;
  (2)  That the defendant knew of the existence of this order;
  (3)  That on or about said date, the defendant knowingly violated a provision of this order;
  (4)  That the defendant has twice been previously convicted for violating the provisions of a court order; and
  (5)  That the defendant's acts occurred in the State of Washington.

CP at 74.

The court also instructed the jury on the definition of "intimate partners" and "dating relationship." CP at 80. Finally, the jurors were instructed, if they found Amsden guilty, on a how to use the special verdict form included in the instructions that addressed whether or not Amsden and the protected person where "intimate partners." CP at 81, 83.

The jury found Amsden guilty of violating the no-contact order and that Amsden and the protected person were intimate partners.

The State's sentencing brief included an overview of Amsden's criminal history, as well as appended copies of the judgments from some, but not all, of the alleged previous convictions. Amsden objected and refused to sign off on the understanding of his criminal history on the belief that some of his previous convictions had washed out. RP (Mar. 21, 2024) at 178-81; CP at 128-29.

After holding a sentencing hearing, the court imposed a prison-based drug offender sentencing alternative of 30 months' incarceration and 30 months' community custody based on a calculated offender score of 9+.

Amsden now appeals.

ANALYSIS

*Bifurcation*

Amsden argues the trial court erred by denying his motion to bifurcate jury instructions. We generally review bifurcation decisions for an abuse of discretion. *State v. Roswell*, 165 Wn.2d 186, 192, 196 P.3d 705 (2008). A trial court abuses its discretion if its decision is manifestly unreasonable or based upon untenable grounds or for untenable reasons." *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006). "A discretionary decision rests on 'untenable grounds' or is based on 'untenable reasons' if the trial court relies on unsupported facts or applies the wrong legal standard; the court's decision is 'manifestly unreasonable' if 'the court, despite applying the correct legal standard to the supported facts, adopts a view "that no reasonable person would take."'" (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)). It is an abuse of discretion for a trial court to base its ruling on an erroneous view of the law. *Id*.

While a bifurcated trial is constitutionally permissible, and sometimes necessary, it is not favored in Washington. *Roswell*, 165 Wn.2d at 197; *State v. Kelley*, 64 Wn. App. 755, 762, 828 P.2d 1106 (1992). When an element of the crime charged includes the existence of a prior conviction, the court may, but is not required to, bifurcate the instructions and the trial. *Oster*, 147 Wn.2d at 147-48. In *Roswell*, the Washington

8

Supreme Court held that the trial court's decision to deny a motion to bifurcate was not an abuse of discretion. 165 Wn.2d at 198. "If a prior conviction is an element of the crime charged, evidence of its existence will never be irrelevant. One can always argue that evidence that tends to prove any element of a crime will have some prejudicial impact on the defendant." *Id*.

Here, the trial court's decision to deny bifurcation was based on tenable reasons. Amsden's prior convictions for violation of a protection order were an element of the crime charged. As noted by the trial court, the *Old Chief* stipulation removed some of the potential prejudice from disclosure of Amsden's prior criminal convictions to the jury, with the stipulation allowing Amsden to concede to the fact of prior convictions and preventing the State from introducing details about those offenses. The purpose of such a stipulation is to reduce the danger of unfair prejudice from the evidence of a prior conviction. *See State v. Taylor*, 193 Wn.2d 691, 697-98, 444 P.3d 1194 (2019). The *Old Chief* stipulation here served to mitigate disclosure of the prior convictions against potential prejudice.

More specific to the facts of this case, Amsden's trial strategy included stipulating to his prior offenses and not denying that the violation of the current no-contact order occurred, instead arguing that his actions were necessary to avoid or minimize a harm—

in this instance hypothermia or freezing to death. With Amsden's agreement that he violated the current no-contact order, the jury was tasked with deciding whether Amsden's necessity defense legally excused his actions. The trial court did not abuse its discretion in declining Amsden's motion to bifurcate.

*Motion to exclude/redact "domestic violence"*

Amsden assigns error to the trial court's denial of his motions to (1) exclude any reference to prior acts of domestic violence between Amsden and the protected party, (2) redact any reference to "domestic violence" from all exhibits, and (3) prohibit use of the term "domestic violence" during trial. A trial court's decision on admissibility of evidence will not be disturbed absent an abuse of discretion. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). A trial court abuses its discretion when it admits evidence that is more prejudicial than probative. *Salas v. Hi-Tech Erectors,* 168 Wn.2d 664, 671-73, 230 P.3d 583 (2010).

The State is entitled to admit into evidence at trial the no-contact order that the defendant is charged with violating. *Taylor*, 193 Wn.2d at 703. A trial court may redact any portion of the no-contact order that poses a risk of unfair prejudice. *Id.* at 702.

Amsden argues evidence that he was previously convicted of a "domestic violence" offense was minimally relevant and highly prejudicial, and the trial court erred

when it allowed the jury to learn about past domestic violence related crimes through the exhibit admitted at trial without redaction and prohibition on use of the term "domestic violence" during trial proceedings. We disagree for three reasons. First, Amsden waived any objection by failing to follow up with objections during trial. Second, he fails to show that the prejudicial effect of using the term outweighed its relevance. And finally, Amsden fails to show prejudice.

In the pretrial hearing on this issue, after considering Amsden's motions to (1) exclude any reference to prior acts of domestic violence between Amsden and the protected party, (2) redact any reference to "domestic violence" from all exhibits, and (3) prohibit use of the term "domestic violence" during trial, the trial court ruled:

> So *at this point*, the Court's going to deny the motion to redact anything involving the term domestic violence. If you have a better way you want me to explain it, but I will explain it's a tag just to show the relationship between the alleged victim and the defendant.

RP (Mar. 11, 2024) at 20 (emphasis added).

"'[W]hen a ruling on a motion in limine is tentative, any error in admitting or excluding evidence is waived unless the trial court is given an opportunity to reconsider its ruling' when the evidence is submitted at trial." *Powell*, 126 Wn.2d at 257 (alteration in original) (quoting *State v. Carlson*, 61 Wn. App. 865, 875, 812 P.2d 536 (1991)). The trial court in its pretrial ruling invited defense counsel to offer a better way for the court

11

to explain the term "domestic violence" to the jury, but we can find nothing in the record to indicate defense counsel took the court up on that offer or otherwise renewed its objection to the State's no-contact order exhibit when the trial court admitted it into evidence.

Even if we were to find that the trial court committed error, Amsden fails to demonstrate that the relevance of using the term "domestic violence" was outweighed by its prejudicial effect. Amsden does not deny that the term was relevant. *See* ER 401.

ER 403 provides that, even if relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Evidence is unfairly prejudicial when it is more likely to create an emotional response from a jury instead of a rational decision. *State v. Scherf*, 192 Wn.2d 350, 388, 429 P.3d 776 (2018). The trial court has wide discretion when balancing the probative value of evidence against the potential prejudicial effect under ER 403. *State v. Rivers*, 129 Wn.2d 697, 710, 921 P.2d 495 (1996). When weighing the probative value of evidence against its prejudicial effect, courts must be careful and methodical. *State v. Gunderson*, 181 Wn.2d 916, 925, 337 P.3d 1090 (2014). This is especially true for domestic violence cases, where the danger

of unfair prejudice is particularly high. *See id*. For nonconstitutional evidentiary error, the defendant bears the burden to demonstrate prejudice. *State v. Barry*, 183 Wn.2d 297, 303-04, 352 P.3d 161 (2015).

Amsden argues evidence that he was previously convicted of a domestic violence related offense was minimally relevant and highly prejudicial, and the court erred when it allowed the jury to associate that phrase with him. The trial court accurately stated that the relationship of intimate partners was part of the crime charged. That relationship was an element of the State's burden of proof. Jurors' experience with no-contact orders and domestic violence were discussed by the trial court, the prosecution, and the defense during jury selection. In this case, Amsden stipulated to prior offenses, agreed to the commission of the underlying offense, and was relying on the defense of necessity for acquittal. Given this situation, there was no abuse of discretion in the trial court's ruling.

Finally, any error in admitting evidence with the term "domestic violence" not redacted or excluded was harmless. Amsden conceded that he violated the no-contact order under the theory that he had no reasonable alternative available to him to avoid the harm of hypothermia or freezing to death. Amsden has not shown that the evidence was so inflammatory as to undermine his necessity defense. We do not find any error, but if there was error, the error was harmless.

*Amsden's criminal history*

Amsden challenges his sentence, arguing the offender score calculation was incorrect because the State failed to prove the existence of all his prior convictions. The State concedes that it did not prove the existence of all prior convictions. We accept the State's concession, reverse Amsden's sentence, and remand for resentencing.

A sentencing court's calculation of an offender score is reviewed de novo. *State v. Tili*, 148 Wn.2d 350, 358, 60 P.3d 1192 (2003). Remand for resentencing is required if the offender score has been miscalculated unless it is clear from the record that the trial court would impose the same sentence. *State v. Parker*, 132 Wn.2d 182, 189, 937 P.2d 575 (1997).

Unless a defendant pleads guilty, he is not obligated to present evidence of his criminal history. *State v. Hunley*, 175 Wn.2d 901, 910, 287 P.3d 584 (2012). At sentencing, the State bears the burden to prove the existence of prior convictions by a preponderance of the evidence. *Id.* at 909-10; *In re Pers. Restraint of Adolph*, 170 Wn.2d 556, 566, 243 P.3d 540 (2010). Absent an affirmative acknowledgement or stipulation by the defendant of their criminal history, it is the State's obligation "to assure that the record before the sentencing court supports the criminal history determination." *State v. Mendoza*, 165 Wn.2d 913, 920, 205 P.3d 113 (2009); *State v. James*, 138 Wn. App. 628,

643, 158 P.3d 102 (2007). A defendant's silence or a reliance on presumptions about the prior convictions does not meet the State's burden. *State v. Jones*, 182 Wn.2d 1, 10, 338 P.3d 278 (2014).

The State argues it may provide proof of Amsden's criminal history on remand for resentencing, notwithstanding what occurred or what was presented at the earlier sentencing hearing. Amsden claims that the introduction of additional evidence would violate *Erlinger v. United States*, 602 U.S. 821, 144 S. Ct. 1840, 219 L. Ed. 2d 451 (2024), in which the United States Supreme Court held that a judge "may 'do no more, consistent with the Sixth Amendment [to the United States Constitution], than determine what crime, with what elements, the defendant was convicted of.'" 602 U.S. at 838 (quoting *Mathis v. United States*, 579 U.S. 500, 511-12, 136 S. Ct. 2243, 195 L. Ed. 2d 604 (2016)). Both *Erlinger* and *Mathis* involved the federal government's pursuit of a sentence enhancement under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), and are not applicable to the facts, charge, sentence, or remand and resentence at issue in this case. We agree with the State on this issue. If the State fails to meet its burden to prove a defendant's criminal history during sentencing, "due process does not prohibit the State from presenting additional evidence in order to meets its burden" on remand. *Jones*, 182 Wn.2d at 10; *see also* RCW 9.94A.525(22). "On remand for resentencing

15

following appeal . . . , the parties shall have the opportunity to present and the court to

consider all relevant evidence regarding criminal history, including history not previously

presented." RCW 9.94A.530(2).

*Statement of additional grounds for review*

Amsden raises two additional issues in a pro se statement of additional grounds

for review.

First, Amsden claims the prosecution offered perjured evidence and did not

present all of the discovery based on the protected person's representations at the

sentencing hearing that she had given Amsden the van, that she had the key, that the

battery was dead, and that a different officer than the one presented at trial arrested

Amsden. Even if true, Amsden has not shown how this prejudiced him at trial or at

sentencing. If Amsden has evidence outside the current record that could support

this claim, his remedy is to raise a challenge in a personal restraint petition. *State v.*

*McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995).

Second, Amsden argues the presiding judge was changed right before trial without

his knowledge or approval. While he cites generally to the superior court criminal rules,

Amsden does not cite to any specific rule requiring his approval for a change in judicial

officer, nor does he claim any prejudice by the change. This argument likewise fails.

16

CONCLUSION

We affirm Mr. Amsden's conviction, but reverse his sentence and remand for resentencing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Murphy, J.

WE CONCUR:

Lawrence-Berrey, C.J.

Staab, J.