[No. 26816-3-I.    Division One.    April 12, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. PEDRO
ANGULO, *Appellant.*

*John R. Muenster* and *Mestel & Muenster,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Kathryn Goater, Deputy,* for respondent.

AGID, J. — Pedro Angulo appeals his convictions for first degree assault and possession of a controlled substance on the ground that his right to a speedy trial under CrR 3.3 was violated. We affirm.

Angulo was charged by amended information with one count of attempted murder in the first degree and two counts of possession of a controlled substance. He was arraigned on those charges on January 19, 1990, and remained in custody. Trial was scheduled for April 9 with a speedy trial expiration date of April 23. The April 9 trial date was continued to April 23 because both counsel were in trial on other cases. On April 23, trial was continued at defense counsel's request to accommodate his plans to attend a wedding, and the speedy trial expiration date was extended to May 23. On May 23, the trial court granted a 5-day continuance because the trial deputy was in trial on another case. On May 30, a second 5-day continuance was granted because defense counsel was in trial on another case. On June 6, a third 5-day continuance was granted because defense counsel was still in trial on the other case, and the speedy trial expiration date was extended to June 12. When the case in which defense counsel was appearing was completed late on June 6, he requested that Angulo's case be immediately sent out to trial. The trial deputy advised the court, however, that she was unavailable to commence trial on June 7 because of a medical appointment scheduled for that day which led to further emergency medical appointments on June 11.

On June 12, the trial deputy requested that she be sent out to trial on a different case, State v. Joel White, King Cy. cause 89-1-06990-0 (1989) and that Angulo's case be held or continued until that trial was concluded. The speedy trial expiration date in White was not until the following day, June 13. The reasons for this request included that White had originally had an earlier trial date and had been held on the trial calendar longer than Angulo,[1] White had been incarcerated 3 weeks longer than Angulo, White's trial was expected to take only 1 week while Angulo's trial was expected to take considerably longer, and scheduling conflicts would arise in White's case if he were not tried first.[2]

White's attorney indicated that she preferred that Angulo's case be tried first even if it meant that White's case would be continued until autumn. She had nonrefundable tickets for her planned vacation in late June and she represented that White did not object to a continuance of some length. She did not, however, consult her client, who was in custody, to determine whether he specifically agreed to a continuance until the end of October. The trial deputy objected to a continuance of that length in White because she feared the State's case would be prejudiced by the fading memories of witnesses. Angulo's attorney did not assert any prejudice on his behalf from the proposed continuance until the completion of White's trial.

The trial court found that White's case had priority over Angulo's because his arraignment date was earlier, he had

---

[1] White was arraigned on December 28, 1989, and had four extensions as of June 12; Angulo, who was arraigned on January 19, 1990, had three extensions as of June 12.

[2] A number of factors contributed to the anticipated scheduling conflicts in White's case, including the trial deputy's understanding that Dr. Reay, the medical examiner and the State's critical witness, was to be on military leave for the month of July; defense counsel in White's case had a vacation scheduled for June 24 through July 10; the trial deputy herself was to be assigned to administrative duties which would not permit her to try cases for part of July and most of August; she had vacation scheduled from mid-September through mid-October; her cocounsel had vacation scheduled in August; and finally, the detective assigned to the case, also a critical witness, had vacation scheduled for August and would be unavailable the entire month.

been incarcerated longer, his trial date had been continued more often, and it was anticipated that his trial would be shorter. The court also found that trying White's case first would avoid a 4-month continuance of White's trial date and the attendant problems which might arise with the ability of the witnesses to recall the event. The trial court therefore continued Angulo's case 7 days to June 19 pursuant to CrR 3.3(h)(2) based on its findings that the continuance was required in the administration of justice and that it would not prejudice Angulo. White's trial commenced that day. On June 19, a 5-day continuance of Angulo's trial date to June 22 was granted. White's trial concluded at noon on June 21. The trial deputy became available for trial at that time, but defense counsel was again in trial on another case and did not become available until June 25.

On June 22, Angulo moved to dismiss for violation of his speedy trial rights under CrR 3.3. The defense had discovered that Dr. Reay, one of the critical witnesses in State v. Joel White, *supra*, was not in fact leaving until July 15 and would not be gone the entire month of July as the trial deputy had represented at the earlier hearing. Defense counsel had obtained a letter to this effect dated June 5, with the dates during which Dr. Reay would be out of town highlighted. The letter had been sent to the prosecutor's office and posted on a bulletin board. At a hearing on the motion on June 25, the trial deputy stated that she was completely unaware of the letter until it was produced by defense counsel. The employee at the prosecutor's office who provided the letter to defense counsel testified that the letter was posted on one of several bulletin boards where such information might be posted. She also said that this particular bulletin board was located in a hallway where people tended to hurry by. She did not know on what day the letter was actually posted. Dr. Reay testified that he had originally expected to leave for military training July 4. He said he had mentioned to the trial deputy that he would be on military leave for the month of July when she originally spoke with him regarding his pending testimony in the White trial.

In light of this testimony, the trial judge denied Angulo's motion to dismiss, observing that his decision to send White's case out to trial before Angulo's rested on the various aging factors of the respective cases which included the arraignment dates, the anticipated length of each trial, which defendant had been incarcerated longer, and which case had been holding on the calendar longer. The trial court also found that the trial deputy did not act in bad faith when she represented to the court on June 12 that Dr. Reay would be unavailable during the entire month of July. Angulo does not appeal that finding.

At the conclusion of trial, which commenced on June 25, a jury convicted Angulo of assault in the first degree. A different jury convicted Angulo of one count of possession of a controlled substance in violation of RCW 69.50.401(d). This appeal followed.

Angulo contends that the trial court violated his speedy trial rights by considering the circumstances of an unrelated case involving a different defendant in granting a CrR 3.3(h)(2) continuance in his case.[3] CrR 3.3(c)(1) provides that a defendant not released from jail pending trial shall be brought to trial not later than 60 days after the date of arraignment. CrR 3.3(h)(2) provides:

> On motion of the State, the court or a party, the court may continue the case when required in the administration of justice and the defendant will not be substantially prejudiced in the presentation of the defense. The motion must be filed on or before the date set for trial or the last day of any continuance or extension granted pursuant to this rule. The court must state on the record or in writing the reasons for the continuance.

██ The grant or denial of a continuance will not be disturbed on appeal absent a showing of manifest abuse of discretion. *State v. Campbell*, 103 Wn.2d 1, 14, 691 P.2d 929 (1984), *cert. denied*, 471 U.S. 1094 (1985). A manifest abuse of discretion occurs when a court's decision is based on

---

[3]While Angulo's assignment of error refers generally to violation of his CrR 3.3 speedy trial rights, the issues he identifies and the arguments in his brief are limited to matters related to the June 12 continuance.

untenable grounds or is made for untenable reasons. *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 77, 684 P.2d 692 (1984). While CrR 3.3 defines a judicially granted procedural right to a speedy trial, it does not define the limits of the constitutional speedy trial right. *State v. Fladebo*, 113 Wn.2d 388, 393, 779 P.2d 707 (1989). The rules are designed to protect, not guarantee, this constitutional right. *Seattle v. Crockett*, 87 Wn.2d 253, 257-58, 551 P.2d 740 (1976).

The scheduling difficulties in White are grounds upon which the trial court could have relied to grant a continuance had those reasons arisen in this case.[4] However, because those reasons arose not in Angulo's case but in an unrelated case assigned to the same trial deputy, they alone would probably not have justified a continuance of Angulo's trial. The critical distinction here is that the trial court did not base its decision solely on the anticipated scheduling conflicts in White's case. Rather, the court also relied on the respective aging factors of the two cases, specifically, that

---

[4]*State v. Kelley*, 64 Wn. App. 755, 766, 828 P.2d 1106 (1992) (fairness in administration and effective justice requires that responsibly scheduled vacations of deputy prosecutors be honored); *State v. Raper*, 47 Wn. App. 530, 539, 736 P.2d 680 (trial deputy assigned to try a different case with a later expiration date on the day the defendant's speedy trial period expired), *review denied*, 108 Wn.2d 1023 (1987); *State v. Stock*, 44 Wn. App. 467, 473, 722 P.2d 1330 (1986) (trial deputy in trial on a different case); *State v. Brown*, 40 Wn. App. 91, 94-95, 697 P.2d 583 (trial deputy in trial on a different case), *review denied*, 103 Wn.2d 1041 (1985); *State v. Eaves*, 39 Wn. App. 16, 20-21, 691 P.2d 245 (1984) (defense counsel in trial on a different case); *State v. Palmer*, 38 Wn. App. 160, 162, 684 P.2d 787 (1984) (scheduling difficulties caused by a delay in assignment out by the presiding department and complications arising in another trial in which the trial deputy was appearing). While each of these cases affirms the granting of a continuance under CrR 3.3(d)(8) and thus relies to some degree on the fact that the delay was unavoidable and/or unforeseen, similar reasons have been held to justify extensions under CrR 3.3(h)(2). *E.g., State v. Terrovona*, 105 Wn.2d 632, 651, 716 P.2d 295 (1986) (3-week continuance granted because of unavailability of key witness); *State v. Nguyen*, 68 Wn. App. 906, 914-15, 847 P.2d 936 (1993) (military leave of material state witness); *State v. Grilley*, 67 Wn. App. 795, 799, 840 P.2d 903 (1992) (scheduled vacations of investigating officers); *State v. Day*, 51 Wn. App. 544, 549, 754 P.2d 1021 (the unavailability of a material state witness is a valid ground for continuing a criminal trial where there is a valid reason for the unavailability, the witness will become available within a reasonable time, and there is no substantial prejudice to the defendant), *review denied*, 111 Wn.2d 1016 (1988).

White was arraigned first, had been incarcerated longer, and his trial had been continued more often, as well as on the anticipated length of the two trials.

■ ■ These were all factors that the trial court could properly consider in deciding whether a continuance was justified. The phrase "administration of justice" in CrR 3.3(h)(2) is not limited to the administration of justice in a single case seen in isolation from others awaiting trial. It is the trial court's responsibility to assure a speedy trial for all criminal defendants. *See* CrR 3.3(a). The court can therefore properly consider the factors affecting all defendants whose cases are scheduled to go out for trial in deciding whether a continuance should be granted under CrR 3.3(h)(2). Within reasonable limits, it is proper for the trial court to balance factors like those presented here in determining how to prioritize cases expiring at or near the same time.

In determining whether Angulo's or White's case should be sent out first, their initial dates of arraignment and the length of time each had been in custody were pivotal factors in deciding who should be tried first. Expiration dates should, of course, normally control the decision. However, when the court faces compelling concerns of fairness and equity to multiple defendants, the court may have to consider other factors as well. The current expiration date may be less significant, for example, once there have been speedy trial waivers and continuances beyond the initial expiration date. Cases are frequently continued for varying lengths of time and for reasons unrelated to the true age of those cases. Therefore, once the initial speedy trial expiration date, which is actually based on the date of arraignment, has passed, it begins to lose its real relationship to the reasons for and purpose of the speedy trial rule.

> These rules are intended to provide for the just determination of *every* criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration, effective justice, and the elimination of unjustifiable expense and delay.

(Italics ours.) CrR 1.2. Under the facts of this case, the 1-day difference between the expiration dates was thus less sig-

nificant than the fact that White had been arraigned 3 weeks earlier and held in jail 3 weeks longer than Angulo.

Angulo argues that adopting this approach would create the exception that would swallow the rule. In response to that legitimate concern, we emphasize that the virtual identity of Angulo's and White's expiration dates is crucial to our decision. A significant difference between defendants' expiration dates could weigh heavily against a CrR 3.3(h)(2) continuance under these circumstances because it would defeat a defendant's expectation and CrR 3.3's mandate that his trial be heard in a timely manner. However, where, as here, the difference is just 1 day, the expiration date is just one of various factors a court may consider in exercising its duty to assure that all cases are heard as promptly as possible after the date of arraignment. When expiration dates are similar, the court may also balance them against other factors such as the length of incarceration, the date of arraignment, the length of trial and other such factors which were considered by the trial court here.

Because the respective aging factors of the two cases and the anticipated length of trial in each case were tenable bases for sending one case out to trial before the other, the trial court did not abuse its discretion in granting the June 12 continuance. CrR 3.3(h)(2) permits a trial court to grant such a continuance on its own motion. Angulo does not contend, and an independent review of the record does not reveal, that he was prejudiced by the delay.[5]

Affirmed.

SCHOLFIELD and BAKER, JJ., concur.

Review denied at 122 Wn.2d 1008 (1993).

---

[5]The prosecutor became available June 21, 9 days after the speedy trial expiration date of June 12. Because defense counsel was by then again in trial on a different case, the actual delay was 13 days. A CrR 3.3(h)(2) continuance need not be limited to 5 days. *State v. Hall*, 55 Wn. App. 834, 840, 780 P.2d 1337 (1989).